

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*Benjamin Levin*
*Assistant United States Attorney*

970 Broad Street, Suite 700
Newark, New Jersey 07102
Direct Dial: (973) 645-2762

**Filed on ECF & Served Via Certified Mail**

Honorable Madeline Cox Arleo
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    <u>United States v. Kent L. Clark</u>, Crim. No. 90-12 (MCA)

Dear Judge Arleo:

      The Government respectfully submits this letter brief in opposition to defendant Kent Clark's (the "Defendant") various pending *pro se* motions for relief. On May 28, 2019, the Defendant requested compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF # 9. On May 12, 2020, the Defendant filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. ECF # 11. On July 6, 2020, the Defendant filed a motion for an arrest of judgment pursuant to Rule 34(a) of the Federal Rules of Criminal Procedure. ECF # 12. For the reasons explained below, the Government respectfully asks the Court to deny the Defendant's various motions.

      **I.**      **Background**

      On January 14, 1985, in the course of a conspiracy to extort $200,000.00 from a bank executive, the Defendant assaulted and kidnapped a mailman, stole a mail truck, brandished a firearm, held the bank executive's eighty-five year-old mother at gunpoint, and sexually assaulted the bank executive's daughter. He did so while cloaked in anonymity, wearing a ski mask, gloves, and full-length clothing to conceal his face and other identifying characteristics.

      This conduct resulted, on January 11, 1990, in the Defendant's indictment by a federal grand jury. The indictment charged the Defendant with the following offenses: conspiracy to commit extortion, in violation of Title 18, United States Code, Section 1951(a)(2) (Count One); conspiracy to commit assault and kidnapping, in violation of Title 18, United States Code, Section 371

(Count Two); attempted extortion, in violation of Title 18, United States Code, Section 1951 (Count Three); assault on a postal employee by the use of a dangerous weapon, in violation of Title 18, United States Code, Section 2114 (Count Four); kidnapping, in violation of Title 18, United States Code, Section 1201(a) (Count Five); unlawful possession and use of a firearm, in violation of Title 18, United states Code, Section 924(c) (Count Seven); and theft of a United States Postal Service vehicle, in violation of Title 18, United States Code, Section 1707 (Count Eight).

The evidence at the Defendant's trial consisted of, in large part, the testimony of co-conspirator Darryl DeVose ("DeVose").  Although DeVose was certainly the central witness in the case, his testimony was corroborated by the testimony of other witnesses.  For example, Lori Masiello, the rape victim, confirmed that her assailant was the same height, weight, and complexion as that of the Defendant.  Similarly, she gave a detailed description of his clothing. Allison Harrold ("Ms. Harrold"), a neighbor, and Joseph Brown ("Mr. Brown"), a nearby gas station attendant, gave the identical description of the clothing worn by a man they saw running near the scene of the crime; Ms. Harrold and Mr. Brown subsequently identified the Defendant from a photo spread as most resembling that man.

On December 6, 1990, after a five-day trial before the Honorable H. Lee Sarokin and a jury, the Defendant was convicted on all counts.  Final judgment of conviction was entered on February 7, 1991 when Judge Sarokin sentenced the Defendant to an aggregate term of imprisonment of life and five years.  The Court of Appeals affirmed the district court judgment on October 7, 1991.  See United States v. Clark, 945 F.2d 396 (3d Cir. 1991).

## II.   Relevant Facts

It is undisputed that the crimes alleged in the indictment were committed. The controlling question at trial, therefore, was not whether the criminal acts alleged in the indictment occurred, but whether the Defendant committed them. After hearing the evidence, the jury concluded unanimously, beyond a reasonable doubt, that he had.

In particular, the jury concluded that, on the morning of January 14, 1985, the Defendant and DeVose kidnapped Benjamin Blacknall ("Blacknall"), a driver for the United States Postal service, and hijacked his truck.  The Defendant stripped and handcuffed Blacknall, as DeVose donned his uniform.

The truck—with Blacknall in the back—was driven to the Springfield residence (the "Masiello Residence") of Arnold Masiello ("Mr. Masiello"), an executive with United Counties Trust Company in Elizabeth.  Prior to this incident, the Defendant, DeVose and a third accomplice, Reginald Wilson ("Wilson"), had staked out the Masiello Residence, as well as the branch of United

Counties Trust Company at which Mr. Masiello worked, as a target for extortion. Mr. Masiello's eighty-five year-old mother ("Ms. Masiello") was at home, as was his twenty-year-old daughter, Lori Masiello, who was asleep. DeVose entered the Masiello Residence by posing as a mailman and by thereafter displaying a gun when Ms. Masiello opened the door. DeVose was followed by the Defendant, who wore gloves, full-length heavy brown clothing, including a tan ski jacket, and a brown ski mask pulled down over his face. DeVose went upstairs to awaken Lori Masiello, while the Defendant held Ms. Masiello at gunpoint in the living room.

After DeVose and Lori Masiello arrived downstairs, the women were led into the kitchen, where DeVose attempted to make phone calls to execute the extortion scheme. While DeVose was on the phone with Reginald Wilson, the Defendant forced Lori Masiello upstairs under a pretext of taking her jewelry. When they reached her bedroom, the Defendant—who stood approximately six-feet-tall, was extremely broad-shouldered and weighed about two-hundred—raped Lori Masiello, holding a gun to her head throughout the incident.

Thereafter, the Defendant brought Lori Masiello back downstairs. DeVose had delayed calling Lori Masiello's father while she was upstairs with the Defendant because DeVose intended to put her on the phone during the extortion attempt.

Lori Masiello and her grandmother were then handcuffed to the refrigerator by the Defendant. Shortly thereafter, DeVose and the Defendant ran out of the house's back door when they saw that the police had arrived.

While they ran from the house, the Defendant fell and cut his hand. At around this time, the Defendant took off the ski mask that he wore. Both the Defendant and DeVose climbed a nearby fence and began to cross an unfinished highway, but they separated when DeVose paused to take off the stolen postal uniform.

Meanwhile, Ms. Harrold, who lived on the other side of the unfinished highway on Short Hills Avenue, was leaving her house that morning when she saw the Defendant, whom she described as a black man who wore a brown top, ran up her street.

A school crossing guard on duty that morning on the same street, also saw the Defendant; the school crossing guard described the Defendant as a light-skinned black man who was running, but stopped running and put a skull cap on his head. The Defendant then went to a nearby Sunoco station, again on Short Hills Avenue, where he asked Mr. Brown, the attendant, if he could wash his hands (presumably because he had cut his hand on the fence as he and DeVose fled). The Defendant was still wearing the brown coat and he was also wearing a brown skull cap. Although the Defendant asked for the station

manager to call him a cab, the Defendant hitched a ride on a truck before the cab arrived.

Later that evening, the Defendant met with DeVose at DeVose's sister's house. The Defendant told DeVose that the Defendant got a ride from a gas station earlier that day. During this conversation, Defendant did not mention anything about the sexual assault. Following an extensive investigation and the filing of the indictment almost five years later, the Defendant was arrested.

### III. Defendant's Various *Pro Se* Motions Should be Denied.

#### A. Defendant's Compassionate Release Motion Is Without Merit.

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that the Bureau of Prisons ("BOP") file such a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* As the movant, the Defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reductions of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[1]

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

As indicated above, if the defendant satisfies the above-referenced requirements, the Court must still assess whether the defendant is a danger to the community under 18 U.S.C. § 3142(g) and whether the factors under 18 U.S.C. § 3553(a) justify early release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; *see also United States v. Pawlowski*, ___ F.3d ___, 2020 WL 4281503, at *2 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)) (noting that "before granting compassionate release, a district court must 'consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable'").

As the Court is aware, 18 U.S.C. § 3142(g) sets out factors that help courts assess whether releasing an inmate will pose a danger to others and the community, including "the nature and circumstances of the offense charged," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the

---

under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

person's release."  18 U.S.C. § 3142(g).  In addition, Section 3553(a) requires a sentencing court to consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) [the kinds of sentences and sentencing range provided for in the U.S.S.G.]
>
> (5) any pertinent [Sentencing Commission policy statement]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Finally, requests for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) are an emerging and evolving area of the law.  The United States Court of Appeals for the Third Circuit, in a recent decision (within the context of an increased number of compassionate release motions because of the COVID-19 pandemic) that held that the abuse-of-discretion standard applies to its review of compassionate release motions, stated that it "will not disturb the District Court's decision 'unless there is a definite and firm conviction that [it] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'"  *Pawlowski*, ___ F.3d ___, 2020 WL 4281503, at *7 ((quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) (citation and quotation marks omitted)).  Therefore, this Court's decision of the instant motion will be afforded great deference.

### 1. The Defendant Appears to Have Exhausted His Administrative Remedies.

The Defendant appears to have exhausted his administrative remedies, as statutorily required. A court may grant a defendant's own motion for a reduction in his sentence *only* if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The Defendant's motion included a March 18, 2019 letter application to the warden of FCC Coleman Low for compassionate release pursuant to § 3582, citing his alleged innocence (presumably as it relates to his assertion that he is not a danger to the community) and general poor health. *See* Def. Mot. Ex. 1. In his motion, the Defendant states that the warden's staff acknowledged receipt of the letter application and declined to take action. While the Defendant did not provide any documentation to support such a claim, insomuch as this Court may find that the Defendant's March 18, 2019 letter was received by the warden at the Defendant's facility, more than thirty days passed between the date of the March 18, 2019 letter and the date of the Defendant's compassionate release motion, which he filed on May 28, 2019. Thus, it does appear—assuming acceptance of the Defendant's representation regarding his submission to the warden—that the Defendant exhausted his administrative remedies.

### 2. The Defendant Fails to Satisfy The Extraordinary or Compelling Reason Requirement Under 18 U.S.C. § 3553(a).

The Defendant has not identified "extraordinary and compelling reasons" for a reduction in sentence within the meaning of § 3582(c)(1)(A) and the Sentencing Commission's policy statement. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. U.S.S.G. § 1B1.13, cmt. n.1 (A).

To state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt.

n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

Here, the Defendant has not identified a medical condition that falls within one of the categories specified in the policy statement's application note. He asserts that, as of the date of his motion, he was sixty-four years' old; his health had begun to fail; and he suffered from hallucinations, poor vision, irregular heartbeat, high blood pressure, and memory loss. *See* Def. Mot. at 2; *see also* Def. Mot. Ex. 1 at 2. Specifically, the Defendant claims that "the prison is unable (or unwilling) to help him with mental health treatment, so it is impossible for him to heal." Def. Mot. Ex. 1 at 2. However, the Defendant did not include a copy of his medical records in support of his claims. Nor could he, given that his medical records belie his claims.

The Defendant's medical records do not support his claims and, in several respects, expressly contradict them. *See* Defendant's Bureau of Prisons ("BOP") Medical Records from 2019, attached as Gov. Ex. A (under seal); *see also* Defendant's BOP Medical Records from 2020, attached as Gov. Ex. B (under seal). The Defendant claimed, generally, that his health had begun to fail, but the "Current" medical conditions list for 2019 (and for 2020), the year in which he filed his motion, belied that claim. *See* Gov. Ex. A at 24 and Gov. Ex. B at 60. Further, despite the Defendant's assertion that he suffered from high blood pressure, the Government was unable to locate in the Defendant's medical records any reference to any high blood pressure diagnosis or treatment. In fact, in a medical visit on September 13, 2019, approximately six months after the date that the Defendant filed his motion, the Defendant did not complain of any acute health issues. *See* Gov. Ex. A at 1.

Further, the Defendant's assertion that he suffers from hallucination or from other mental health issues is directly contradicted by his medical records. The 2019 records do not mention any psychological issues or diagnoses. Further, the 2020 records mention that on several examination dates throughout 2020, the Defendant had "[n]o significant mental health issues." Gov. Ex. B at 82-88. Therefore, the Defendant either does not have any mental health issues, or the Defendant failed to report any mental health issues to the physicians at his facility, rendering as untrue his assertion in his motion that the "prison is unable (or unwilling) to help him with mental health treatment." Def. Mot. at 2.

Notably, the medical records make clear that the Defendant needed—and received—reading glasses and that he is being treated with medication for heart disease. Further, his medical records make clear that his cardiac arrhythmia/atrial fibrillation is in remission. *See* Gov. Ex. A at 24; *see also* Gov. Ex. B at 60. However, these issues, all of which are treated, hardly constitute medical conditions that fall within one of the categories specified in the policy

statement's application note.  Therefore, the Defendant failed to satisfy the extraordinary or compelling reason requirement under 18 U.S.C. § 3553(a) and his motion should be denied.

### 3. The § 3553(a) Factors Weigh Against Release.

Even if the Court concluded that the above-referenced threshold requirements were met, that is not the end of the inquiry under § 3582(c)(1)(A). In other words, even if the Defendant satisfied the extraordinary or compelling reason requirement, this Court must then consider whether the Defendant poses a danger to the community and all other pertinent 3553(a) factors, including the Defendant's history and characteristics, the time remaining on the sentence, and the quality of the release plan.  After evaluating those factors, denial is still warranted.

The Defendant's crimes—conspiracy to commit extortion, conspiracy to commit assault and kidnapping, attempted extortion, assault on a postal employee by the use of a dangerous weapon, kidnapping, unlawful possession and use of a firearm, and theft of a United States Postal Service vehicle—were unequivocally serious.  18 U.S.C. §§ 3553(a)(1) and (a)(2)(A).  The Defendant's crime spree was violent in several ways and his conduct caused injury and lasting trauma to several victims. Specifically, the Defendant kidnapped a postal employee, held two women hostage in an attempt to extort money from their family member, and raped one of the women (a twenty-year-old) during the extortion attempt.

The Defendant's criminal history is just as troubling.  *See* 18 U.S.C. § 3553(a)(1).  At the time of sentencing, the Defendant was thirty-six years' old, but had already amassed several serious convictions for crimes like robbery and unlawful possession a handgun.  *See* Presentence Report ("PSR") ¶¶ 19-30, attached as Gov. Ex. C.  Further, the need for specific deterrence weighs heavily against early release.   18 U.S.C. § 3553(a)(2)(C).   The Defendant's record demonstrates that the only thing that halted his violent and relentless criminal career was his incapacitation.  Therefore, due to the Defendant's criminal history, coupled with his overall conduct in this case, the Defendant is a danger to the community, as provided in 18 U.S.C. § 3142(g).

General deterrence also militates against compassionate release.  18 U.S.C. § 3553(a)(2)(B).  Early release would not deter adequately other individuals who are considering committing comparably heinous crimes.  The Defendant has served approximately thirty years in prison, which is substantial, but the Defendant still has a tremendous amount of time left to serve in prison, as he was given a life sentence plus five years.  In the future, after the Defendant has served more of his sentence and if the Defendant suffers from medical conditions that are extraordinary and compelling, the Defendant might be an appropriate candidate for compassionate release.  However, he is not currently

such a candidate. This Court sent the appropriate message to the community with its sentence and this Court's judgment should not be disturbed.

Finally, because the § 3553(a) factors weigh against release, this Court would be within its discretion to deny the Defendant's motion. *See Pawlowski*, ___ F.3d ___, 2020 WL 4281503, at *6 (the District Court did not abuse its discretion in denying compassionate release to a defendant with CDC-listed risk factors who had served only a small portion of a substantial sentence).

Therefore, for the reasons stated above, the Defendant's motion for compassionate release should be denied.

### B. Defendant's Motion for a New Trial Is Without Merit

On May 12, 2020, the Defendant filed a Motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("FCRP") based on newly discovered evidence. Specifically, the Defendant claims that he is entitled to a new trial because in March 2020, he received for the first time a Federal Bureau of Investigation ("FBI") Fingerprint Report (the "report") from 1985 that the Defendant argues is exculpatory because it shows that the fingerprints recovered on mail inside of the postal car do not belong to the Defendant. *See* Def. Mot. at 2; *see also* Def. Mot. Ex. B at 2. The Defendant is wrong.

A motion under Rule 33 based on newly discovered evidence must be made within three years after final judgment, and a motion for a new trial pursuant to Rule 33 based on any other ground must be made within fourteen days after a verdict. *See* FRCP Rule 33. There are five requirements that must be met before a court may grant a new trial based on newly discovered evidence:

> (a) the evidence must be in fact newly discovered, i.e. discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*See United States v. Saada,* 212 F.3d 210, 216 (3d Cir. 2000) (quoting *Government of the Virgin Islands v. Lima,* 774 F.2d 1245, 1250 (3d Cir.1985)). Failure to satisfy any one of those elements is fatal to a motion for a new trial. *See United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006).* The Defendant has a "heavy burden" in meeting these requirements. *See United States v. Ashfield*, 735 F.2d 101, 112 (3d Cir. 1984).

Importantly, it is unclear whether the time limitation under Rule 33(b)(1), relating to claims involving newly discovered evidence, is jurisdictional or is claims-processing. *See United States v. Coleman,* 811 F.2d 804, 807 (3d Cir.

1987) ("The lime limit for filing motions under Rule 33 is jurisdictional [such that] a district court is powerless to entertain such motions out of time"). *But see Eberhart v. United States*, 546 U.S. 12, 13 (2005) (the time limitation rule in Rule 33(b)(2), which applies to motion for a new trial for any reason other than newly discovered evidence, is a claims-processing rule that can be forfeited). Even if Rule 33(b)(1) is not jurisdictional based on the *Eberhart* Court's analysis of Rule 33(b)(2), it is mandatory when invoked by the Government. *See id.* at 17. As will be discussed below, the Government asserts that the Defendant's motion is untimely, and this Court should deny this motion on that basis without a need to render a decision on the merits.

### 1. Defendant's Motion is Procedurally Barred.

Defendant's motion is untimely. The verdict was reached in this case on December 6, 1990 and the judgment became final on October 7, 1991 when the Court of Appeals affirmed the judgment of conviction. Therefore, the Defendant's motion is untimely, as it was filed significantly later than three years after the final judgment. *See* Rule 33(b)(1); *see also United States v. Rashid*, 375 F. App'x 199, 201 (3d. Cir. 2010) (not precedential) ("The District Court properly concluded that Rashid's motion for a new trial under Rule 33 was untimely by more than a decade"); *see also* Pelullo v. United States, 352 F. App'x 620, 623 (3d Cir. 2009) (not precedential).

Here, the Defendant asks this Court to accept his contention that he received, in March 2020, the report that the Defendant included in his motion as Exhibit A. However, the Defendant failed to include any information about the report's purported sender, nor did the Defendant at minimum provide a copy of the envelope from which the letter would have been sent, which might have corroborated that the Defendant actually received the report in March 2020.[2]

Based on the trial record in this case, the lack of incriminating fingerprint evidence was known to all parties at the time of the trial. And, in fact, this very fact is referenced in the Presentence Report, as discussed below. It is therefore almost certain that the report, dated May 16, 1985—or, at a minimum, the contents thereof—was/were disclosed to the Defendant's trial attorney before trial, along with the other discovery materials. Assuming arguendo that the Defendant's trial attorney did not have the report at the time of the trial, the information in the report is—as addressed below—not "newly discovered," as required in a Rule 33 motion. Therefore, because the Defendant's motion was filed well after the requisite time period, the Defendant's motion should be denied.

---

[2] Failing to provide any corroborating information regarding when the Defendant received the report demonstrates that the Defendant failed to satisfy the diligence prong, as described in *Saada*. The remaining required factors will be further analyzed below.

### a. The Defendant's Motion Appears to be An Unauthorized Successive 28 U.S.C § 2255 Petition

The Defendant attacks the validity of his conviction. Consequently, the Defendant's motion appears to be a § 2255 petition. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). However, the Defendant has filed several prior § 2255 petitions and the Defendant failed to obtain the requisite certification from the Court of Appeals to file a § 2255 petition on the grounds asserted in this motion. Based on the Defendant's history as a prolific *pro se* litigant and because the Defendant demonstrated his knowledge and ability to obtain the requisite certification from the Court of Appeals to file the Defendant's pending § 2255 petition, the Defendant's motion should be denied. *See* Civ. No. 19-017214 (the Defendant's pending § 2255 petition was filed after the Defendant filed a motion with the Third Circuit for authorization to file a second or successive § 2255 petition to challenge his § 924(c) conviction based on the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015)).

The Defendant filed his first *pro se* 28 U.S.C. § 2255 petition in June 1998, which was similarly styled it as a motion for a new trial. Civ. No. 98-3887. On September 9, 1998, Judge Debevoise denied the motion as untimely without issuing a certificate of appealability and the Third Circuit denied the Defendant's application for a certificate in November 1999. Appeal No. 99-5054.

The Defendant also separately sought leave from the Third Circuit to file a second § 2255 petition on various grounds. Appeal No. 01-1141. In March 2001, the Circuit denied his application, concluding that his arguments were untimely, inapplicable, and frivolous. Nevertheless, the Defendant filed a series of motions in this Court that, though styled in various ways, appeared to be a second § 2255 petition. Because the Defendant failed to obtain the requisite certification from the Court of Appeals, Judge Debevoise denied all of the Defendant's requests in 2004. Civ. No. 98-3887. The Third Circuit again denied the Defendant's request for a certificate of appealability. Appeal No. 04-1619.

In August 2016, the Defendant filed a *pro se* motion to dismiss the indictment in the instant. In July 2018, Judge Walls determined that the Defendant's motion was "nothing more than a § 2255 petition in disguise (his third)" and denied the motion for the Defendant's failure to seek authorization from the Third Circuit. Crim. No. 90-12.

The Defendant's history of extensive post-conviction litigation demonstrates that the Defendant understands the certification requirement and that he failed to obtain the Third Circuit's permission before filing the instant motion. Therefore, this Court should deny the Defendant's motion.

### 2. Even if this Court Reaches the Merits, Defendant's Motion Should be Denied.

If this Court does not summarily deny this motion on procedural grounds, the Defendant's motion fails on its merits because the Defendant fails to satisfy the five requirements that were described in *Saada*.

First, the evidence proffered by the Defendant is not new information and is cumulative to other information in the trial record, namely the lack of incriminating forensic evidence. In fact, the Presentence Report ("PSR") explicitly states that "[t]he defendant was not tied to the offense by any of the specimen samples." *See* PSR, attached as Gov. Ex. C at 7. One of the "specimen samples" was the Defendant's fingerprints, which FBI agents collected sometime after the date of this incident. Further, the Defendant's trial attorney, in his Opening Statement (and in other parts of the trial), focused the jury's attention on the lack of incriminating fingerprint evidence: "If they had found a fingerprint or matched the blood, that is all we would be hearing about, but it didn't happen." *See* Trial Transcript from November 26, 1990, attached as Gov. Ex. D at 137. In the Government's Summation, the prosecutor noted how "[w]hile we are on the subject of corroboration, let me say – talk about things that you know are not in this case, one is fingerprints." *See* Trial Transcript from November 29, 1990, attached as Gov. Ex. E at 30.

Second, while a fingerprint report and fingerprint evidence is generally material to the issue of identity in a trial where the Defendant argued that he was not the perpetrator, such a report is not material in a case like this where the trial record indicates that the Defendant was wearing gloves during the commission of the crimes for which he was convicted. Further, a lack of incriminating fingerprint evidence is not inherently exculpatory; the trial record also indicates that DeVose's fingerprints were not found at the crime scene, but there is no dispute that he was present. DeVose also wore a pair of gloves during the commission of these crimes.

Finally, even assuming arguendo that the Defendant satisfied the first four requirements that are described in *Saada*, the Defendant's alleged newly discovered evidence is not of such a nature that it would produce an acquittal in a new trial. Again, a fingerprint report that is not incriminating would not change the result where the trial record indicates that the Defendant wore gloves and where there was ample evidence supporting the Defendant's conviction. Therefore, because the Defendant failed to satisfy one, let alone all, of the five required factors described in *Saada*, the Defendant's motion must be denied.

### C. The Defendant's Motion for an Arrest of Judgement Is Without Merit.

On June 23, 2020, the Defendant filed a Motion for an Arrest of Judgment pursuant to Rule 34 of the Federal Rules of Criminal Procedure. FRCP 34 states that a court, on motion of a defendant, "shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." FRCP 34. The Defendant asserts that this Court lacked subject matter jurisdiction over this matter because the prosecution of this case should have been barred because of a violation of the five-year statute of limitations pursuant to 18 U.S.C. § 3282(a). *See* Def. Mot. at 2.

The Defendant's claim is wrong. Under 18 U.S.C. § 3282(a), "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, *unless the indictment is found . . . within five years* next after such offense shall have been committed. *Id.* (emphasis added). The offense date here was January 14, 1985. The indictment charging the Defendant with the crimes for which he was later convicted was filed on January 11, 1990—three days before the expiration of the statute of limitations. *See* Filed Indictment, attached as Gov. Ex. E. Therefore, the Defendant's motion should be denied.

### IV. Conclusion

Accordingly, this Court should deny each of the Defendant's motions, as each are without merit.

Respectfully submitted,

RACHAEL A. HONIG
Acting United States Attorney

By:   *s/ Benjamin Levin*
Benjamin Levin
Assistant U.S. Attorney

cc:   Kent L. Clark, *pro se*
Reg. No. 13649-050
Federal Correctional Complex
Coleman Medium
846 NE 54th Terrace
Sumterville, FL 33521

Rahul Sharma, Esq., *counsel for Kent L. Clark*